I would like to reserve a couple of minutes at this time for my rebuttal. Knowing that the Court is familiar with the facts of this case, I would like to discuss why the Court erred in granting absolute immunity in this matter and failed to address the subject matter of jurisdiction, only looking to the Meeks test to make a determination of whether the acts were during a judicial function. I would submit to the Court that this is a straight application of this Court's case of Sardoski v. Mosley. You have a situation where in Sardoski that particular criminal judge resentenced an individual who he had placed on probation on what is known as a wobbler offense in Nevada, which could be this misdemeanor or felony. In that instance, the Court acted by violating this individual's rights. He essentially did not have the right to come back and resentence her, but he acted under subject matter jurisdiction. The Court found that as a matter of law, that judge could take those actions because even though he was violating her rights to double jeopardy, he had the statutory ability to come in and bring her back under subject matter jurisdiction. In this particular instance, what occurred was Judge Asad was taking my client, Ann Sernowski, who was nothing more than down there on a request for an extension for her boyfriend into custody to ensure that the boyfriend would then come to court because of a prior telephone conference or telephone request, which the judge either believed that the boyfriend, Mr. Madera, had been rude or had, in fact, committed some type of criminal act. Let me ask you this. The test you're working off of is the jurisdiction test, and in order for the judge to have lost what otherwise would have as absolute immunity, he has to be acting, I think the word is clearly, without any subject matter jurisdiction. Would this be a different case if your client had been a client, excuse me, been a lawyer representing him in that courtroom? Yes. If he had been a lawyer, then he would have had the right to do something, or if it had been Mr. Madera that was there and he was trying to... And why would it be a different case if your client had been a lawyer instead of a lay person doing the representing? Because of the fact that they would be there under particular statutory guidance in terms of an attorney has an obligation to appear before a court and do certain requirements. In this particular instance, what we had was nothing more than a common situation where an individual comes in the people's court where many people aren't represented by attorneys in any effect and are allowed to make these telephone either threat or rudeness on the part of Mr. Madera to the clerk or what they called an institutional representative who deals with these types of requests on the telephone. And what apparently had occurred was the court had been informed that in fact Mr. Madera had either been extremely rude or had threatened. So I think what's important in terms of looking at whether in fact there was any actions attributed to Ms. Schanowski, there were absolutely none. But my question is really different. I understand that there's no claim anywhere in this case that she herself behaved improperly. The question is, from the jurisdictional point, is whether the judge was acting so far outside of his subject matter jurisdiction that he loses his immunity. And let me come back to the question then as to what would have happened had she been a lawyer. And your answer was, well, if she had been a lawyer representing him in precisely that circumstance, he would have been sufficiently within his subject matter jurisdiction so as not to lose his immunity. I'm not sure I understand the distinction between her acting as a lawyer, which she was not, and her acting as a representative here for purposes of jurisdiction. She was told over the phone that she could come in and say this for him. That is to say she's not unauthorized as a representative in that circumstance. The difference, Judge, is in this particular instance, she's taken into custody to force Mr. Maduro to come to court. I understand that. She's a hostage. She's held – well, she's held – that's the language that the amicus uses. She was taken hostage, no court having jurisdiction to take a third-party hostage to force a party to come to court. And that's the argument why there would never be subject matter jurisdiction, whereas an attorney who has an obligation to represent clients, if he goes before – or he or she goes before the court, then they are, of course, before the court. But you're saying that an attorney can be taken hostage. Well, I'm not saying that an attorney can be taken hostage, but if an attorney's conduct is such that it's in a situation where the judge believes that their actions are not appropriate, then the court clearly has the right to take – No, I asked about an attorney who is behaving as your client did, that is to say an attorney who's behaving properly. That's to say, showing up, representing his client, and the judge says, you better get your client in here, and until your client shows up, I'd like you to spend a little time in the back of the courtroom with some handcuffs on. I think that's clearly inappropriate also in this particular instance, but – But inappropriate is not what we're here about. The question is whether it's a violation of a constitutional right. And I ask you, what's the difference between holding an to make a pitch as if you were an attorney, hostage? What's the difference? Well, I really think in terms of the fact that an individual comes before the court as an attorney, I think an attorney has a reasonable expectation that they'll be dealing with sometimes judges that are in a situation that perhaps aren't acting in accordance with what would be judicial conduct. But clearly, you have here a situation where she is not acting as an attorney. The conduct that is in question here isn't what she was dealing with. It was what her boyfriend had done previously. But shouldn't we be concentrating on what the judge did, not what her capacity was? It was a judge acting so far outside of the jurisdiction of his court that what the judge did was a violation of constitutional rights. It is. It is in the sense that under the test that we're looking at here, there's no subject matter jurisdiction. All right. Now, the second question I have is, if we're concentrating on the judge, how do you get around the Morellis case? The Morellis case, there was an allegation which had to be taken as true on a 12b6 motion that the judge ordered the sheriffs to use excessive force to go and get a public defender in one department and wrestle him into the judge's department. Now, there was an allegation of use of excessive force. And the Supreme Court said that we shouldn't single in on the act, but we should look at the function of the court to determine whether he was acting within jurisdiction. That is, if the court were functioning to bring an officer to the courtroom or a party to the courtroom in this case, we shouldn't look at the particular means employed to determine whether he was acting outside of judicial function. Doesn't that end this case? No, because you're focusing on the judicial act of bringing the public defender in using excessive force here. The situation that makes my case different is the fact that the conduct that was in question wasn't that she had come to court or that she had acted or done something inappropriately in court or was supposed to be there in court. It was based upon the judge's lack of subject matter jurisdiction, trying to enforce some type of either administrative situation or he was engaged in some kind of investigation of the criminal conduct. Morelis, the judge, wanted the attorney in court. I'm sorry? I understand. Morelis, they wanted the attorney in court. In this case, the judge wanted the party in court, right? Correct. So he wanted somebody in court. That was a judicial function. In Morelis, it was admitted he was using excessive force. Here, he was using a hostage on poor Ms. Krasinovsky, right? All right. So the means in both cases were beyond what the judge should do, to use a hackneyed term, inappropriate, right? But how does that change? Because of the situation, Your Honor, that he's acting, a judge is acting in excess of his jurisdiction. He has jurisdiction to bring that individual, that attorney, into court. Why is he acting in excess of jurisdiction here, but not acting in excess of jurisdiction in Morelis? Well, because of the fact that he doesn't have subject matter jurisdiction. It's the difference is the subject matter jurisdiction. The excess is a different. I would submit that the other arguments that are dealing with the bailout for the court, part of our argument was that the judge would then say, well, he didn't tell the marshal to act the way he did and that's the way we plied that so that he wouldn't be able to argue that, and I would like to reserve the additional time. You have 10 seconds, and we'll make sure you have it. We won't keep you to 10 seconds. We'll give you a minute or two. We'll give you whatever time you need. May it please the court, Walter Cannon on behalf of Municipal Court Judge George Asad. Are you going to split argument time? We are, and so I'm going to briefly cover what I thought the issue was raised with regard to subject matter jurisdiction, and counsel repeatedly said this court had no subject matter jurisdiction. Clearly, under NRS 266-555, the Municipal Court in the state of Nevada has subject matter jurisdiction over traffic offenses committed within the city and over misdemeanors. Let me ask you this, because time is short. The behavior here was, by comparison to behavior I could imagine, relatively mild. What if the judge had, instead of ordering the marshal to take her into custody, had ordered the marshal to strip off all of her clothes and to march up and down the hallway until the ticket, Morales, comes? Would your argument be the same? It would be the same. There's still absolute immunity in that circumstance? It would be the same. I'm not sure the result would be the same. There is no bright line rule as we stand here today. We know, for example, in the Morales case, you could use excessive force. You can sterilize in Stump v. Sparkman. Where the Supreme Court and where this court draws that line, I'm not sure. But the question we're being asked here is whether there's subject matter jurisdiction, and I have trouble deciding how, figuring out how subject matter jurisdiction either exists or does not exist, depending on how outrageous the part of the hostage-taking. Here, in the actual case, the hostage-taking is, she's put in handcuffs, and she's put in a cell for a couple of hours. It's clearly beyond his power to do. We have a disciplinary proceeding in which the Nevada authorities have told him that it's beyond his authority to do. And it's also beyond his authority to make her walk him down the hallway of the courthouse bare naked until he shows up. In one, you say there's no subject matter jurisdiction. In the other, you say there is. What's the difference? The only thing he's done is that it's more outrageous as a method of coercing the appearance. Well, if you'll remember, in Stump, the Supreme Court gave us two examples, a distinction between what is excess jurisdiction and what is in clear absence of jurisdiction. In so doing, they used a probate court. And they said, if a court has jurisdiction to handle probate matters, wills, trusts, those things, and it tries a criminal case, it's without jurisdiction. If, on the other hand, it's a criminal judge with a criminal calendar, and he tries the case on a trumped-up charge, that's excess jurisdiction. And in fact, absolute immunity attaches. No, I understand that, but I'm, let's come back to our case. In our, go ahead, I'm sorry. Are you, are you, are you, are you still on the, willing to say that Martin making a march up and down the hallway until he shows up is outside of subject matter jurisdiction, or rather so far outside that he loses immunity? I think that's the question. I, I, I'm prepared to say that at some point, and I'm not exactly sure based on the case law where that point is, but it's certainly not this case, that there But what I'm after here is, I mean, I, I understand that. What he is, he's, we're in traffic court, and he's trying to secure the appearance of a guy who clearly owes a traffic ticket, and may or may not have said some pretty nasty things over the telephone. And, and the question is, you, you're saying, well, but he's trying to secure his appearance, and therefore it's within the subject matter. But then you say, but there are certain methods of securing his appearance that would be outside of that. And, but this method, even though illegal under Nevada law, he's been disciplined by the judicial commission for doing it. You say, now, that's not so outrageous. Well, I'm saying in this case, under the case law that exists at this time, Morales is the, probably the best example. This pales in comparison to that case. That was an alleged excessive force where the man was slammed off the courtroom door, and the court in that case held he was entitled to immunity because there was not a clear absence of subject matter jurisdiction. But Morales actually seems easier to find immunity because it's very obvious the judge had the authority to compel the appearance of the attorney. He compels the appearance of the attorney. And the only thing that went wrong is the compelling was a little bit rough. Bangs him into some doors as they bring him in. Here, there's no authority whatsoever to hold her hostage. She came into the court in a representative capacity. She says that by her affidavit. She was there in place of her boyfriend. She was before the court. It was in session. The judge was on the bench. She inserted herself into that situation where the court clearly had, as you pointed out, jurisdiction to deal with the issue before him. We're dealing with the act of the judge, not as counsel suggests. Another act. Suppose instead of Ms. Kronosky, it were a Western Union messenger who said, I have a message for you, Mr. Madero, the defendant won't be here. And exactly the same thing happened. The judge said, all right, you're going to stay back there and be handcuffed until your client who sent the telegram shows up. Would that be outside his jurisdiction? I believe under your decisions in the Ashelman case and in the Meek case, yes. I believe that. Because of the factors, that particular situation does not fulfill the four factors that we need to look to to make that decision. If the court, I noticed that I've used almost all my co-counsel's time. But if you have another question, I'd be happy to try to address it. Otherwise, I'd like to allow my co-counsel at least some time to argue their position. Thank you very much for your time. May it please the court. Tom Beatty for Marshall, the Deputy City Marshal, Mr. Saavedra. Let me say first that basically, the issues as to Saavedra are quite similar, only now we're talking about absolute quasi-judicial immunity. For all the reasons that I respectfully suggest have been submitted in the brief, there is both clearly subject matter jurisdiction, as well as not a, excuse me, it's a judicial act, and it's not in the clear absence of all jurisdiction. More importantly, with the quasi-judicial immunity, and as we look at this, we need to remember that this is not a situation of judges protecting judges. This is judges protecting the public. Because it is only, these whole concepts exist only so that the public will have judges who can fairly, impartially, and without fear of being sued, therefore be a little bit independent, make decisions on matters coming in front of them. Excuse me. They rely also to carry out their function. Go ahead. No, I'm sorry. Excuse me, I didn't hear. Thank you. They rely upon their court personnel to carry out their orders. And indeed, this court has recognized the reasons why the bail option, and it must be protected in this kind of an instance. We need the fearless, unhesitating execution of court orders. That's covered all out of this circuit. It's unfair to grant a judge immunity for issuing an order and yet deny it to the bailiff who's simply carrying out that order. Could I interrupt you for a moment? Sure. I had a question. Can't we fairly, on a 12B6, can't we fairly read the complaint as alleging that Mr. Savedra exceeded the scope of what the judge told him to do by putting Chresnowski into handcuffs? And if so, isn't there a liability outside of the quasi-judicial immunity? Arguably, at some point in the spectrum, there would be liability if the order is carried out in an excessive or improper manner. Putting handcuffs on someone ordered into custody can't possibly reach that criteria. King v. Thornburg was a classic example where they sent two deputy marshals out some 70 miles from Savannah to Brunswick to bring back the attorney who couldn't make the court appearance. They waited until he'd finished trying the criminal case and then asked him to step outside, promptly handcuffed him, waist chained him, took him back, and that's an officer of the court who had tried to make arrangements for his partner to cover the court appearance that he missed. And the court had no problem whatever in finding that there was nothing wrong with that kind of a general rule that this is what we will do with persons in custody. That's the issue today. As sad as it may be, the reality is that if you have somebody in custody, they're going to have to be restrained to some degree. Mind you, and what this- This nice young woman who comes in saying my boyfriend's at work needs to be handcuffed? If you're going to take her to hold her in the back of the courtroom, if you're going to take her, you don't know for sure. We now can say, because nothing happened, that she's a nice young lady. How do we know that when we start off? You're the officer. What are you going to do? You've just received the order. Hold her in custody. What's your rule in holding her in custody? You're going to be handcuffed? And by the way, this isn't really the holding cell that we think of, the big jails and all that. This is in the courthouse, in a small section just around, in the old system, at the old courthouse, it was just around the corner there. For protection of everybody, you're going to put cuffs on that person, period. That's what they're doing. That's not, indeed, at some point, what they've argued and suggested in their brief and conceded, is that was a ministerial act of Mr. Saavedra doing that, period. That's what had to be done. And mind you, excessive force by handcuffing, not in the manner, they didn't beat her first and then put cuffs on her, they didn't knock her to the ground and then put cuffs on her, simply handcuffs. And I can't, with all due respect, I cannot see any way, shape, or form that in today's world, given the issues and the exigencies, that simply handcuffing someone does that, or amounts to excessive force. OK, you're over time, but I don't want to cut you off. You've got a paragraph. Two quick points, paragraph. We can't really ask our bailiffs to act as pseudo-appellate court judges and try to determine whether this particular order is valid or not. We can't deal with that. And don't forget that in this particular case, we also have the issue of qualified immunity recognized in Sadowski, for example, from this court, and also in Saussure versus Katz, that if they're a reasonable mistake as to the legality of their use, or they're carrying out of the order, then they're entitled to immunity. So in his case, he's got all the defenses of Judge Assad, plus the qualified immunity issue of reasonably understanding and carrying out that order. Thank you. Thank you. Do we have more? I'm afraid so. And who are you representing? The city of Las Vegas. Now, you had 10 minutes aside. We're now into 11 minutes and 48 seconds. Why don't you talk? But I think we're going to have to hear from him for a very long time. I'll either sit down or I've synthesized my argument in one statement. Say what you need to say. Thank you. I don't want to be unreasonable about this. Maybe 10 minutes was too short, given three people who needed to argue. Go ahead. May it please the Court, I'm William Henry, Senior Litigation Counsel for the City of Las Vegas. The subsection 1983 suit is brought against the city. Well, it's a little difficult to tell. One looks at the complaint, it's for failure to train. If one reads all the briefs, there's some assertions by the plaintiff that the city has. Is the judge in the city of the, in the employee of the city, or is it just the deputy? He's an independently elected political officer as a municipal judge. So does your client have any obligation to train the judge? No, nor do we have any power. I understand that. Judges are very difficult to train. I practiced law for 31 years and had no success. Having said that, I think that the resolution of the question of whether or not the city of Las Vegas has subsection 1983 liability in this case can be resolved by answering this question. Must the city of Las Vegas recruit its municipal court bailiffs from the ranks of Ninth Circuit judges? Because that's the contention of the plaintiff, that we should train our bailiffs to exercise independent judgment of the law in every instance where their judge says do this or do that. I would submit that that is not the law and that cannot be the law. I think you might be vulnerable to a really big lawsuit if you hired Ninth Circuit judges. Okay. Okay, thank you. Thank you. Response? With respect of the last defendant, I guess, respondent, isn't it required under 1983 for the plaintiff to allege that the city had practices which led to the damage to your plaintiff, not simply respondee at superior? That's correct, Your Honor. What practices have you alleged? Judge, we alleged in the complaint that there was a failure to train and supervise as well as dealing with, and it was dealing with the marshal, so Vader wasn't dealing with the judge. The state of Nevada, even though their municipal court judges are held to be part of the state judiciary, although they may actually get their money from the city, they're actually state officers, they're elected officials. So you say that there was a failure of the city of Las Vegas to tell its sheriffs not to follow the judge's orders. Well, no, in terms of, if you have a consensual situation, I mean, the prudent matter would have been to take the person out. We're not clear because there's been no discovery done whether Judge Assange was trying to say, well, the bailiff didn't do what I told him to do, I just told him to take her outside and have her make the phone call. Instead, he puts her, cuffs her, puts her in the cell with other people, and I would submit it's a cell, it's a jail cell that's very similar to what you have in federal courthouses or state courthouses. It's a cell where you keep prisoners, and where the council wants to try and pooh-pah that and say that, but no, our complaint, it's a notice pleading that deals with the Minnell claim. We're not trying to argue or respond to that, it's superior on the 1983 claim, and I think that was spelled out. I would just submit, though, that what Judge Assange was doing here is either doing a criminal investigation on this phone call, or secondly, he was trying to foster some kind of administrative code to protect these clerks. That's not what a judge does. He's acting in a law enforcement investigative fashion, and he doesn't have anything better than qualified immunity if, in fact, that's what he's doing. But I would submit that he's acting outside of the prospect of what his job is in terms of the subject matter jurisdiction. Thank you, Your Honor. Thank you very much. Thank all of you for your arguments in this, well, I'll say an interesting case. It is an interesting case. The case of Chernovsky versus Assad is now submitted for decision.
judges: Fletcher, Bea, Ikuta